**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NOS.   24-451** |
| **KRISTIAN JACKSON** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Kristian Jackson, while on juvenile probation for a shooting, committed a gunpoint carjacking in West Philadelphia.  During that offense, the defendant and his two co-conspirators accosted a man at gunpoint, ordered him out of his vehicle, and stole his car.  The harm inflicted upon the victim and the lifelong trauma he will suffer as a result of the actions of the defendant and his co-conspirators, and the senseless nature of the crime in this case, would be sufficient, standing alone, to merit a significant sentence to protect the public from future violent crimes committed by the defendant.  Here, the Court should look to the defendant's prior criminal history that, notwithstanding the defendant's age at the time of that offense, demonstrates a need to protect the public from crimes committed by the defendant, and specifically shows a need to protect the public from future violent criminal conduct by the defendant. For these reasons, as well as for the reasons provided below, the government recommends a sentence of incarceration slightly below the advisory guideline range and in accordance with the plea agreement, of 111 months, to be comprised of a sentence of 27 months on the carjacking count, and a consecutive 84 month sentence on Count Two, to be followed by a five-year term of supervised release, a $200 special assessment, and restitution of $7,400.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

I.    **BACKGROUND**

On December 19, 2024, a grand jury sitting in the Eastern District of Pennsylvania returned a two-count indictment docketed at 24-CR-451, charging the defendant with carjacking

---

[1]  Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

(Count One) and the carrying, using, and brandishing of a firearm during and in-relation to a crime of violence (Count Two).  On April 24, 2025, a grand jury returned a superseding indictment that charged additional offenses but did not impact the charges pending against the defendant.  On October 29, 2025, the defendant pled guilty to one count of carjacking, in violation of 18 U.S.C. § 2119, and one count of carrying, using, brandishing a firearm during and in-relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), as charged in the superseding indictment.

On September 17, 2024, at approximately 2:24 p.m., Victim #1 parked on the 300 block of 62nd Street, Philadelphia, PA and reported being immediately approached by three males, one of whom was the defendant. One of the three males asked Victim #1 to drive them somewhere; when Victim #1 refused, two of the males took out handguns and told Victim #1 to get out of the car. The three males, including the defendant, then got into Victim #1's car – a black 2016 Chevy Malibu with Vehicle Identification Number ("VIN") 1G1ZE5ST6GF258164. The males also took Victim #1's iPhone 14 and approximately $500.00 U.S. currency, which were left inside the car. The males then drove off in the car, heading south on 62nd Street, then turning west onto Vine Street. Victim #1 was later interviewed by PPD Detectives and FBI Special Agents. He reported that the firearms appeared to be real, were very close to his face, and he got a good look at them. Further, search warrants on the Instagram accounts and cell phones of the defendant and his co-conspirators revealed evidence supporting that the defendant and his co-conspirators were in possession of real firearms and firearm ammunition during the vicinity of the offense charged in Count One of 24-CR-451.

II.    **SENTENCING CALCULATION**

**A.    Statutory Maximum Sentence.**

**Count One**: Title 18, United States Code, Section 2119(1) (carjacking): the maximum penalty is 15 years' imprisonment; up to 3 years' supervised release; a $250,000 fine; and a $100 special assessment.

**Count Two**: Title 18, United States Code, Section 924(c) (brandishing a firearm during and in relation to a crime of violence): The statutory maximum is life imprisonment, a mandatory term of seven years' imprisonment consecutive to any other sentence imposed, a $250,000 fine, five years' supervised release and a $100 special assessment.

**Total Maximum Sentence**: life imprisonment, a mandatory minimum of seven years' imprisonment consecutive to any other sentence imposed, a five-year period of supervised release, a $500,000 fine, and a $200 special assessment.  Restitution also shall be ordered.

**B.    Sentencing Guidelines Calculation.**

The applicable guideline range in this case is 117-125 months as accurately calculated in the Presentence Investigation Report (PSR).  First, regarding the carjacking charged in Count One, the base offense level for a violation of 18 U.S.C. § 2119 (carjacking) is 20 under USSG § 2B3.1(a).  Six levels would normally be added because a firearm was otherwise used, here the offenders conveyed a specific threat by pointing a firearm, however this enhancement is not applied because of the conviction for a violation of 924(c).  USSG § 2B3.1(b)(2)(B); PSR ¶ 28.

Two levels are added because the offense involved carjacking. PSR ¶ 29. Thus, the offense level for the Philadelphia carjacking is 22.

Here, the defendant timely accepted responsibility and the government agrees that he should receive the three-point reduction in the offense level. See PSR ¶ 35-36; USSG § 3E1.1(a-b). Thus, the total offense level is 19.

The defendant has one prior scored juvenile adjudication, where in May of 2022, the defendant was adjudicated delinquent for aggravated assault – attempt to cause serious bodily injury and possession of a firearm by a minor, for which the defendant receives two points. PSR ¶ 38. The PSI simply states that the defendant was involved in a shooting. This adjudication places the defendant in criminal history category II. PSR ¶ 42. The defendant was discharged from placement in May of 2024.

The guideline range for an offense level of 19 and a criminal history category of II is 33-41 months. PSR ¶ 90; USSG Sentencing Table. Here, 84 months are added to the guideline range based on the conviction on Count Two, thus the final guideline range becomes 117 to 125 months. PSR ¶ 90.

## III.   <u>ANALYSIS</u>

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-

Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

A.    **Consideration of the 3553(a) Factors Regarding Imprisonment**.

The defendant committed serious criminal offenses involving firearms that victimized an innocent person. While on court supervision for a shooting, the defendant committed a gunpoint carjacking that involved stealing the car of a man who was simply going about his business in Philadelphia. Jackson's crimes fall squarely within the class of cases to which the applicable guidelines are addressed, and thus consideration of the nature of the offense, § 3553(a)(1), counsels in favor of the guideline sentence.

Here, the defendant was discharged from commitment on May 23, 2024. PSR ¶ 38. On September 17, 2024, the defendant committed the charged offense. On October 18, 2024, the defendant failed to appear at a hearing with juvenile probation and a bench warrant was issued.

PSR ¶ 38.  On October 31, 2024, Philadelphia Juvenile Probation attempted to arrest the defendant at his residence on Scattergood Street, but he was not located.  On November 20, 2024, a local arrest warrant was issued for the defendant charging him with the Philadelphia carjacking.  Notwithstanding his indictment, he remained on the run despite repeated federal efforts to arrest the defendant at various residences in Philadelphia.  Finally, on April 16, 2025, he was taken into custody by FBI SWAT when he jumped out of a third-floor window and onto a second-floor roof in an unsuccessful attempt to escape from law enforcement.

The government concurs that a slight downward variance is appropriate here in light of the defendant's age and his being less culpable than his co-defendants.[2]  That said, a sentence of 111 months is appropriate given the nature of the offense and the defendant's deliberate efforts to avoid capture.

Further, the defendant's history supports the need for significant incarceration.  The defendant committed a juvenile offense described as a shooting, thus, obviously with a firearm, and then committed the gunpoint carjacking charged here.  Then, the defendant successfully evaded law enforcement detection for a period of approximately seven months.  It is clear that the recommended term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2).  Furthermore, the recommended sentence of incarceration affords adequate deterrence to others

---

[2] Each of the co-defendants in this case where charged with two carjacking offenses and each plead guilty.  The government has requested a sentence at the bottom of Legend Hall's guideline range, 162 months, ECF 84, and anticipates requesting a sentence at the bottom of Jalaal Claitt's guideline range, which will he higher based on Claitt's pre-plea criminal history report which placed him in CHC V.

who would commit a similar offense, and protects the public from further crimes of the defendant, for at least as long as he remains incarcerated. *Id.*

In addition, adherence to the recommended guideline range assures that the defendant's sentence is consistent with those imposed nationwide on similarly situated offenders, and thus complying with Section 3553(a)(6) and avoiding undue disparity.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D).

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a 111 month sentence. As noted, the Sentencing Guidelines present "the lodestone of sentencing," *Peugh*, 569 U.S. at 544, and that guide is once again persuasive in this case.

### B.    <u>Supervised Release</u>.

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception

of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of at least five years is warranted. As explained above, the defendant presents a record of criminal conduct, including a prior adjudication for a violent offense. Close supervision following release from imprisonment is warranted to aid his reentry to society and to protect the public. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), assure that the defendant continues to pursue education and vocational efforts that promote rehabilitation, § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7). Further, the Sentencing Commission recognizes that "the more serious the defendant's criminal history, the greater the need for supervised release." § 5D1.1 app. note 2. The Commission adds: "In a case in which a defendant sentenced to imprisonment is an abuser of controlled substances or alcohol, it is highly recommended that a term of supervised release also be imposed." § 5D1.1 app. note 3.

This assessment also supports imposition of all of the mandatory and standard conditions of supervised release listed in Section 5D1.3.

**IV.    CONCLUSION**

The government's final recommendation regarding sentencing appears in the sealed

attachment.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s Robert E. Eckert*
Robert E. Eckert
Assistant United States Attorney

Samantha A. Arena
Special Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:

Susan Lin, Esq.

*/s Robert E. Eckert*
Robert E. Eckert
Assistant United States Attorney

DATED:  February 5, 2026